UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TREQUAN RIDDLE,

        Plaintiff,

v.

FACEBOOK, INC. et al.,

        Defendants.
_____/

Case No. 1:23-cv-1275

Honorable Hala Y. Jarbou

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff initiated this action by filing his complaint in the United States District Court for the Eastern District of California. In an order (ECF No. 3) entered on December 5, 2023, the Eastern District of California transferred the matter to this Court for further proceedings. This Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims for failure to state a claim. Plaintiff's

state law claims for intentional infliction of emotional distress will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred "generally statewide" in Michigan. (Compl., ECF No. 1, PageID.1.) Plaintiff sues Facebook, Inc. (Facebook), Facebook CEO Mark Zuckerberg, and the Michigan Corrections Brotherhood Facebook page.

Plaintiff alleges that he was sexually assaulted by non-party Correctional Officer Cox on May 6, 2023, while at the Marquette General Hospital. (*Id.*, PageID.3.) Plaintiff claims that he was in leg restraints, handcuffs, and the "black box" when this occurred. (*Id.*) He avers that Officer Cox is a member of the Michigan Corrections Brotherhood. (*Id.*) Plaintiff was told that he would be tased if he "said anything to the nurses at the hospital about being gang raped." (*Id.*) Plaintiff contends that Facebook "is responsible for allowing staff to blog about prisoners sexually making me a victimized target to be exploited." (*Id.*) He suggests that this is not the only time he has been assaulted, referring to incidents that occurred in 2019 and March of 2023. (*Id.*)

Plaintiff also faults Facebook for allowing the Michigan Corrections Brotherhood page to "blog about [his] sensitive medical information." (*Id.*, PageID.4.) According to Plaintiff, staff who are members of the page post about his "mental health information [such as] being on Haldol . . ., running across [the] prison naked, [and] being at moderate risk of suicide and self-injury." (*Id.*) Plaintiff also refers to an incident where he tore his mattress apart and slept inside it. (*Id.*) Overall, Plaintiff contends that the Michigan Corrections Brotherhood page "exploit[s] gossip of [Plaintiff] self-harming and attempt[ing] suicide," and that Facebook allows this to happen. (*Id.*)

2

Plaintiff claims that Facebook's deliberate indifference "is a threat to [his] safety because [he] could have more of [his] mental health information leak[ed] to statewide prison officials." (*Id.*, PageID.5.) He believes that staff could deny him necessary mental health treatment because of the "actions done by staff who are not a part of this non-government [s]ite which is a commercial [s]ite that has nothing to do with the" MDOC. (*Id.*)

Plaintiff alleges that he has been antagonized about his mental health and sexually assaulted and harassed at various facilities because of the postings on the Facebook page. (*Id.*, PageID.4, 5.) Based on the foregoing, Plaintiff indicates that he is asserting violations of his Eighth Amendment rights, as well as his Fourteenth Amendment right to "medical and mental health privacy." (*Id.*, PageID.3–5.) Plaintiff also mentions violations of the Health Insurance Portability and Accountability Act (HIPAA), as well as state law claims for intentional infliction of emotional distress. (*Id.*, PageID.3, 4.) Plaintiff seeks $250,000.00 in damages, as well as for the Michigan Corrections Brotherhood Facebook page to be shut down. (*Id.*, PageID.6.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

3

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

      A.      **HIPAA Claims**

As noted above, Plaintiff references violation of the HIPAA. Plaintiff, however, cannot maintain such claims because there is no private cause of action for a HIPAA violation. *See Burley v. Rider*, No. 1:17-cv-88, 2018 WL 6033531, at *5 (W.D. Mich. Aug. 27, 2018), *report and recommendation adopted*, 2018 WL 4443071 (W.D. Mich. Sept. 18, 2018); *see also Faber v. Ciox Health, LLC*, 944 F.3d 593, 596 (6th Cir. 2019) (noting that "HIPAA doesn't authorize a private cause of action."). Rather, if Plaintiff believes that a HIPAA violation has occurred, his only recourse is to file a complaint with the Secretary of Health and Human Services. *See* 45 C.F.R. § 160.306; *see also Johnson v. Kuehne & Nagle Inc.*, No. 11-cv-02317-STA-cgc, 2012 WL 1022939, at *5 (W.D. Tenn. Mar. 26, 2012). Accordingly, Plaintiff's claims asserting violations of the HIPAA will be dismissed.

      B.      **Section 1983 Claims**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457

U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

Where the defendants are not state officials, their conduct will be deemed to constitute state action only if it meets one of three narrow tests. The first is the symbiotic relationship test, or nexus test, in which the inquiry focuses on whether "the State had so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Jackson*, 419 U.S. at 357–58. Second, the state compulsion test describes situations "in which the government has coerced or at least significantly encouraged the action alleged to violate the Constitution." *NBC v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1026 (11th Cir. 1988); *accord Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170 (1970). Finally, the public function test covers private actors performing functions that are "traditionally the exclusive prerogative of the State." *Jackson*, 419 U.S. at 353; *accord West*, 487 U.S. at 49–50. *See generally Lugar*, 457 U.S. at 936–39 (discussing three tests).

Here, Plaintiff's complaint is devoid of factual allegations from which the Court could infer that Defendants Facebook and Zuckerberg's conduct could be attributable to the State. Even if the Michigan Corrections Brotherhood maintains a Facebook page, Plaintiff's complaint is devoid of allegations suggesting that Defendants Facebook and Zuckerberg were joint participants, coerced by the state, or were performing functions that are traditionally State prerogatives. Plaintiff, therefore, fails to state § 1983 claims against Defendants Facebook and Zuckerberg.

Plaintiff also names the Michigan Corrections Brotherhood Facebook page as a Defendant. As an initial matter, a Facebook page certainly is not a "person" for purposes of § 1983 liability.

5

To the extent Plaintiff named the page as an attempt to impose liability upon all the officers who are members of the page, he has failed to state a claim for relief. "Summary reference to a single, [multi]-headed 'Defendants' does not support a reasonable inference that each Defendant is liable" for the events described in the complaint. *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))).

In any event, simply because MDOC officers maintain the Michigan Corrections Brotherhood Facebook page does not mean that the operation of the page constitutes action taken under state law. The Sixth Circuit has recently considered the question of when a public official can be deemed to run a Facebook page as an official acting under color of state law. *See generally Lindke v. Freed*, 37 F.4th 1199 (6th Cir. 2022), *cert. granted*, 143 S. Ct. 1780 (2023). In *Lindke*, the Sixth Circuit noted that "social-media activity may be state action when it (1) is part of an officeholder's 'actual or apparent dut[ies],'" or (2) couldn't happen in the same way 'without the authority of [the] office.'" *Id.* at 1203 (alterations in original) (quoting *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001)).

Here, Plaintiff's complaint is devoid of facts suggesting that the maintenance of the Facebook page is part of MDOC officers' actual or apparent duties. Furthermore, there is nothing in the complaint from which the Court could infer that the alleged actions could not happen without the authority of the office. In *Lindke*, the Sixth Circuit noted that "[w]hen analyzing social-media activity, [a court must] look to a page or account as a whole, not each individual post." *Id.* That is

so because "[l]ooking too narrowly at isolated action without reference to the context of the entire page risks losing the forest for the trees." *Id.* Plaintiff's complaint is simply devoid of facts suggesting that the "challenged conduct is . . . related in some meaningful way either to the actor's governmental status or to the performance of his duties." *Waters*, 242 F.3d at 359. Plaintiff has provided no facts regarding the purpose of the Michigan Corrections Brotherhood Facebook page, nor does he allege that the Facebook page is solely maintained for MDOC officials to publicly humiliate MDOC prisoners.

The Court is sympathetic to Plaintiff's allegations concerning sexual assault by MDOC officers. However, Plaintiff has not named any of those officers as Defendants, and his complaint fails to establish that any of the named Defendants—Facebook, Zuckerberg, and the Michigan Corrections Brotherhood Facebook page—acted under color of state law for purposes of § 1983 liability. Accordingly, Plaintiff's § 1983 claims are subject to dismissal for the reasons discussed above.[1]

---

[1] Although Plaintiff has not established that any of the Defendants are state actors for purposes of § 1983 liability, he also fails to set forth a Fourteenth Amendment claim premised upon medical privacy. The Fourteenth Amendment can be read to protect the privacy of personal medical information, *see Whalen v. Roe*, 429 U.S. 589, 599 (1977); however, the scope of the privacy right depends on context, and in the case of prisoners, is dependent on whether the disclosure of information is reasonably related to a legitimate penological interest. *See Powell v. Schriver*, 175 F.3d 107, 111–112 (2d Cir. 1999). In interpreting *Whalen*, the Sixth Circuit has expressly held that "the Constitution does not encompass a general right to nondisclosure of private information" by government officials. *Doe v. Wiggington*, 21 F. 3d 733, 740 (6th Cir. 1994) (quoting *J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1981)). The rule established in *DeSanti* precludes any "generic" Fourteenth Amendment claim for the disclosure of private information. *See Treesh v. Cardaris*, No. 2:10-cv-437, 2010 WL 3001738, at *2–4 (S.D. Ohio July 30, 2010); *see also Holden v. Michigan Dep't of Corr.*, No. 1:12-cv-284, 2012 WL 2317538, at *5 (W.D. Mich. June 18, 2012) (finding that the disclosure of a prisoner's health and/or HIV status to prison officials and other inmates does not implicate a fundamental interest protected by the right to privacy under the Fourteenth Amendment).

### C. State Law Claims

Plaintiff references experiencing intentional infliction of emotional distress, suggesting that he is asserting state law tort claims against Defendants. Section 1983, however, does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

To the extent Plaintiff seeks to invoke this Court's supplemental jurisdiction over his state law tort claims, this Court declines to do so. Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, because the Court will dismiss Plaintiff's federal claims against all Defendants, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state law claims will be dismissed without prejudice.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims for intentional infliction of emotional distress will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: December 28, 2023          /s/ Hala Y. Jarbou
                                  HALA Y. JARBOU
                                  CHIEF UNITED STATES DISTRICT JUDGE